UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARILYN GREEN

**REPORT AND
RECOMMENDATION**

Plaintiff,

v.

07-CV-00231(T)(M)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

This case was referred to me by Hon. Richard J. Arcara to hear and report in accordance with 28 U.S.C. §636(b)(1) (Dkt. #7)[1]. Before me are the parties' cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. ("Rule") 12(c) (Dkt. ##9, 11). For the following reasons, I recommend that defendant's motion for judgment on the pleadings be DENIED and that plaintiff's cross-motion be GRANTED.


**PROCEDURAL BACKGROUND**

Pursuant to 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security, denying her application for Social Security Disability Insurance ("SSD") and Supplemental Security Income Benefits ("SSI") (Dkt. #1). Plaintiff filed an application for SSD and SSI on March 26, 2003 (T44-46, 169-170).[2] These claims were

---

[1]      Judge Arcara later reassigned the case from himself to Hon. Michael A. Telesca (Dkt. #13).

[2]      References to "T" are to the certified transcript of the administrative record filed by the defendant in this action.

initially denied on July 16, 2003 (see T23-24, 27-31, 170A-170C). A hearing on both claims was conducted before Administrative Law Judge Eugene F. Wisniewski on September 20, 2004 (T178-208). Plaintiff was represented at the hearing by Jeffrey E. Marion, Esq. (T36-37). On November 8, 2004 ALJ Wisniewski issued a decision denying plaintiff's claim on the grounds that plaintiff was not under a disability as defined in the Social Security Act and that there were a significant number of jobs in the national economy that plaintiff could perform (T13-22). ALJ Wisniewski's determination became the final decision of the Commissioner on March 19, 2007, when the Appeals Council denied plaintiff's request for review (T5-9).

## THE ADMINISTRATIVE RECORD

### I.    Medical Evidence

On January 26, 2001 plaintiff began treatment with Susan Szimonisz, M.D., a gynecologist (T138). Plaintiff complained of lower back pain on June 20, 2001 and Dr. Szimonisz recommended that plaintiff not lift any weight greater than twenty pounds (T134). On June 25, 2001 plaintiff complained of leg pain and swelling and Dr. Szimonisz informed her that she had degenerative disc disease (T133). Plaintiff continued to complain of left extremity swelling on June 28, 2001 and Dr. Szimonisz found that plaintiff's ability to stand and walk were limited (T131). She also began treatment for sleep apnea in the following months (T128-130).

In February 2002, Dr. Szimonisz treated plaintiff for sinusitis (T120) and informed plaintiff, in March 2002, that her limited range of motion was due to her obesity (T119). To improve plaintiff's condition, Dr. Szimonisz referred plaintiff for breast reduction surgery, a chest x-ray, and recommended that she lose weight (Id.). Plaintiff reported feeling

better in April 2002 (T117), but complained of intermittent back spasms in November 2002, for which Dr. Szimonisz scheduled a lumbosacral spine x-ray (T113).  In December 2002 Dr. Szimonisz did not find evidence of disc herniation, but noted that weight reduction was an issue, and recommended chiropractic evaluation (T110).  Plaintiff continued to report back and foot pain (T102).

On March 10, 2003 Lynne Fries, a physical therapist, and David Bagnall, M.D., a spine and musculoskeletal specialist, jointly evaluated plaintiff's condition (165-167).  At this time plaintiff claimed no improvement in her symptoms despite attending physical therapy and undergoing breast reduction surgery (T165). During the examination, plaintiff reported an "insidious onset of low back pain and locking", "aching in her bilateral posterior thighs", and "aching at the lateral border of her right foot" (Id.).  She also complained of aching and tightness in her legs, which forced her to sit, and stated that "the catching in her back can be quite severe with ambulation" (Id.). Plaintiff further complained of occasional shortness of breath and swelling of her fingers (Id.). She reported using a CPAP machine for sleeping (Id.).  Plaintiff graded her pain intensity, at that point, as an eight out of ten (Id.).  Ms. Fries and Dr. Bagnall found no signs of any unexplained weight loss, fever, rash or edema of her lower extremities (Id.).

Ms. Fries and Dr. Bagnall noted that plaintiff's active lumbar range of motion was 50% restricted in side bending bilaterally, and also noted a 25% restriction in her flexion and extension (T166). They also noted that plaintiff had a "general decreased recruitment in the lumbar spine" (Id.).  Plaintiff "showed no abnormal pain behaviors . . . and appeared to give a good effort" (Id.).  Plaintiff's deep tendon reflexes were equal and normal in the lower

extremities and her light touch was grossly intact (Id.).  Ms. Fries and Dr. Bagnall concluded that plaintiff suffered from "chronic lower back pain, discogenic . . . in nature.  Radicular complaints to the distal lower extremities, right greater than left, with stenotic features per patient history" (Id.).  They prescribed 600 mg. of Daypro and ordered a MRI of the lumbar spine (Id).  Ms. Fries and Dr. Bagnall also gave plaintiff a prescription to continue physical therapy as needed for four to eight weeks, and recommended that plaintiff consider a short course of chiropractic intervention (T167).

At a follow-up examination with Dr. Bagnall on March 24, 2003, plaintiff's condition remained unchanged (T163).  Dr. Bagnall reviewed a MRI and opined that plaintiff's pain was a result of normal aging and did not believe that any form of epidural injection would be helpful at that time (T163).  Rather, he recommended mild pain medications and that plaintiff undertake an exercise program (Id.).  Plaintiff was also advised to avoid "certain activities that make her symptoms worse" and to attend a brief period of chiropractic care (Id.).

On May 14, 2003 plaintiff was seen by Dr. Szimonisz with complaints of carpal tunnel syndrome (T98). Upon examination, Dr. Szimonisz stated that plaintiff was obese but in no apparent distress, and had a full range of motion in her shoulders and neck (Id.).  Dr. Szimonisz diagnosed plaintiff with degenerative disc disease of the lumbar spine and upper extremity paresthesias (Id.).

On May 19, 2003, September 22, 2003, and December 22, 2003 Dr. Bagnall completed follow-up evaluations and checked the box entitled "NA" under the category "return

to work" or should not return to work (T159, 160, 162).[3] On August 21, 2003 Dr. Bagnall performed an epidural steroid injection and diagnosed plaintiff with a lumbar disc herniation (T161).  On December 22, 2003 Dr. Bagnall noted that the epidural injection provided only temporary relief and referred plaintiff to Dr. Anthony Leone[4], a spinal surgeon, for an opinion (T158).  He continued plaintiff on Celebrex, prescribed Ultram, and scheduled her to return in three months (Id.).

### B.      Consultative Examinations

On May 17, 2003, George A. Sirotenko, D.O., a consultative physician, performed an internal medical examination (T139). At this time, plaintiff complained of a two and a half year history of back problems and/or of intermittent numbness in her hands and fingers at night (T139).  Dr. Sirotenko noted that plaintiff's current physical therapy and medications provided moderate improvement of her symptoms, but that she was not considered a surgical candidate (T139-140).

Dr. Sirotenko diagnosed plaintiff with a history of low back pain, a history of sleep apnea (which improved when plaintiff utilized a CPAP machine), and a history of nocturnal carpal tunnel syndrome (T139)  He concluded that plaintiff should avoid maintaining one position for greater than two hours at a time and be allowed frequent opportunity to alternate

---

[3]      Plaintiff interprets the checked "NA" box, on the "Return to work" line of Dr. Bagnall's "Follow-up evaluation" form, to mean "Not Able", as opposed to "Not Applicable".  Defendant does not dispute this interpretation.

[4]      The record does not contain any treatment notes from Dr. Anthony Leone or indicate if plaintiff actually saw the surgeon.

between sitting, standing and walking throughout an eight-hour day (T142). Dr. Sirotenko also found that given her current weight of 260 lbs on a 5'4" frame she should "avoid repetitive kneeling, squatting or bending stairs, inclines or ladders on a repetitive basis" (Id.). Plaintiff's sleep apnea was "subjectively currently controlled with CPAP machine" (Id.)

On June 30, 2003 W. Poole, M.D., a state agency review physician, prepared a physical residual functional capacity assessment (T148-153). Dr. Poole opined that plaintiff could "occasionally lift or carry 20 pounds" and "could frequently lift and/or carry 10 pounds" (T149). He also opined that plaintiff could stand and/or walk, with normal breaks for a total of about 6 hours in an 8 hour workday, and sit, with normal breaks, for a total of about 6 hours in an 8 hour workday. Dr. Poole concluded that "plaintiff's claims were credible, but not to the extent alleged" (T151).

Dr. Poole based his findings on the information provided in the June 30, 2003 "Request for Medical Advice" form completed by Verna Yu, M.D., a physical medicine and rehab review physician, which noted that plaintiff had a "RFC-light= restriction in frequent movement of the [right] hand" (T154).

## II.   Administrative Hearing Conducted on September 20, 2004

### A.   Plaintiff's Testimony

Plaintiff was 49 years old at the time of the hearing and testified that she had an eleventh grade education (T184). She worked as a home-care health aide from 1990 to 2001, as a babysitter from 2001 to 2003 (T184-185), and was currently a foster mother to two children

(T186).  Plaintiff testified that she could no longer perform the required duties of a babysitter or a home-care health aide (T186-187).

Regarding her physical condition, plaintiff testified that she had difficulty bending at the waist due to swelling in her right leg and knee and also complained of radiating symptoms that ran down her leg (T187).  Plaintiff testified that she was only able to sit for approximately twenty minutes before standing to relieve the pressure (T189).  Plaintiff rated her pain as a nine out of ten (T197).  She also reported using a "CPFE machine" at night to assist with her sleep apnea (T190) and admitted having high blood pressure, which she treated with medications (T194, 198).

Plaintiff then testified that each morning she makes breakfast for her foster children and prepares them for school (T191).  After the children leave, the pain forces her to either sit or lay down for a couple of hours (T192).  Before the children come home, plaintiff completes some household chores and then prepares dinner, which primarily consist of TV dinners because the pain prevents her from cooking and lifting anything heavy (T194-195).

Plaintiff also testified that her pain prevents her from driving and that she could only ride in a car for fifteen minutes on average (T194). The pain also interferes with her ability to climb stairs, stand, wash dishes, mop (T190) and forces her to rest every twenty to forty steps when she walks around her neighborhood (T195).  Plaintiff testified that she has not undergone surgery because her doctors could not guarantee it would alleviate her pain (T200).

During the hearing ALJ Wisniewski asked plaintiff's attorney if he possessed plaintiff's March 2003 MRI report because he wanted to determine if there was "any impingement or stenosis" in plaintiff's lower sacral spine, stating that "by itself, a herniated disc

has little or no significance. . . . Because if there's no stenosis and no impingement, we don't have very much" (T187-189). Plaintiff's attorney was unable to locate the MRI (T188). ALJ Wisniewski noted that "a person having a disc herniation was not itself significant. Half the population above 50 has disc herniation and don't even know it" (T187).

## B.      Vocational Expert's Testimony

James Ryan, a vocational expert, testified that plaintiff's employment as a home-care health aide was heavy unskilled work, babysitting was medium unskilled work, and a foster care provider was light, unskilled work (T202).

ALJ Wisniewski then asked Mr. Ryan to describe any careers available for a woman with plaintiff's limitations (T202-203). Mr. Ryan testified that an individual with these limitations would be able to perform the following occupations: machine tender, sales clerk, fast food worker, dispatcher, general clerical worker, and receptionist (T204). When asked if there was any vocation that would allow an individual time to lie down during the day, Mr. Ryan testified that this was a significant vocational limitation, which would prevent an individual from performing any "substantial gainful activity that exists in significant numbers in the United States" (T205).

## III.    ALJ Wisniewski's November 8, 2004 Decision

ALJ Wisniewski determined that plaintiff suffered from severe impairments of low back pain, shortness of breath, and obesity, but concluded that plaintiff "did not have an impairment or combination of impairments that met or medically equaled the criteria of an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Regulations No. 4" (T21).  He regarded plaintiff's carpel tunnel syndrome and sleep apnea as non-severe impairments because they were "subjective allegations" that only had a minimal affect on plaintiff's basic work activity (T17).  He also found plaintiff's claims of disabling pain to be "excessive, not fully credible and they have been treated accordingly" (T19).

ALJ Wisniewski determined that the opinions of the treating physicians, state agency medical experts and consultative internist examiner were "supported by and consistent with the clinical signs and findings of the record" and accorded them "great weight" (Id.).  Based upon the evidence in the record, ALJ Wisniewski concluded that the plaintiff had the residual functional capacity "to perform light exertion work with the need for a sit/stand option; nonexertionally, she should avoid repetitive kneeling, squatting, bending or climbing stairs, inclines or ladders" (T21).

Relying on the testimony of the vocational expert, ALJ Wisniewski found that plaintiff was unable to perform her past relevant work, but acknowledged that there were a significant number of jobs in both the local and national economy that she could perform, including machine tender, sales clerk, fast food worker, dispatcher, general clerical, and receptionist (T22).  Based upon plaintiff's exertional capacity for light work, her age, education, and work experience, ALJ Wisniewski concluded that plaintiff was "not disabled" (Id.).

## IV.     Post Hearing Submission

On November 16, 2004, plaintiff's attorney sent the Appeals Council the March 17, 2003 MRI report (T171) that ALJ Wisniewski requested at the hearing and on

May 26, 2005 plaintiff's attorney mailed a letter arguing for the reversal of the unfavorable decision (T173). The March 17, 2003 MRI report showed "degenerative disc disease at the lower three lumbar spine levels", a "far right lateral L4-5 disc herniation", and "a broad, right lateral L5-S1 disc herniation" (T171). It also noted a "right lateral disc herniation at L4-5 contacting the right L4 nerve root" and that the L5-S1 herniation "slightly contacts the right S1 nerve root at its origin producing no significant displacement" (Id.).

## V.      Appeals Council's March 19, 2007 Decision

The Appeals Council considered the additional evidence and found that:

"At the hearing the Administrative Law Judge stated that herniation, by itself, is not that significant unless there was impingement or stenosis. Your representative submitted an MRI that shows L4-5 herniation that slightly narrows the neural foramin and an L5-S1 herniation that causes no significant displacement of the nerve root. This evidence is consistent with your treatment records that note the presence of disc herniation, but not significant neurological deficits. This new evidence does not show that you have any limitations beyond those found by the Administrative Law Judge. The council found no basis for your representative's contention with respect to bias" (T6).

The Appeals Council concluded that the information did not provide a basis for reviewing ALJ Wisniewski's decision (T5-6). The denial made ALJ Wisniewski's decision the final decision for the Commissioner of Social Security (T5).

## DISCUSSION AND ANALYSIS

### I.   Scope of Judicial Review

The Social Security Act states that, upon review of the Commissioner's decision by the district court, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. §405(g).  Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion".  Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

Under this standard, the scope of judicial review of the Commissioner's decision is limited.  This Court may not try the case *de novo*, nor substitute its findings for those of the Commissioner.  Townley v. Heckler, 748 F. 2d 109, 112 (2d Cir. 1984).  Rather, the Commissioner's decision may be reversed only when it is based on legal error or is not supported by substantial evidence in the record as a whole.  Balsamo v. Chater, 142 F. 3d 75, 79 (2d Cir. 1998).  If supported by substantial evidence, the Commissioner's decision must be sustained "even where substantial evidence may support the plaintiff's position and despite that the Court's independent analysis of the evidence may differ" from that of the Commissioner.  Martin v. Shalala, 1995 WL 222059, *5 (W.D.N.Y.).

However, before deciding whether the Commissioner's determination is supported by substantial evidence, I must first determine "whether the Commissioner applied the correct legal standard".  Tejada v. Apfel, 167 F. 3d 770, 773 (2d Cir. 1999).  "Failure to apply the correct legal standards is grounds for reversal." Townley, supra, 748 F. 2d at 112.

## II.     The Disability Standard

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §1382c(a)(3)(B).

The determination of disability entails a five-step sequential evaluation process:

"1.     The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.     If not, the Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities.

3.     If the claimant has a 'severe impairment,' the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4.     If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.     If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The

Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps."

Shaw v. Chater, 221 F. 3d 126, 132 (2d Cir. 2000); see 20 C.F.R. §§404.1520, 416.920.

## III.   Analysis

### A.   ALJ Wisniewski Did Not Substitute His Judgment for That of the Medical Experts

Plaintiff argues that ALJ Wisniewski improperly substituted his own opinion for the opinion of the medical expert, when he stated that "a person having a disc herniation is not itself that significant. Half the population over the age of 50 have disc herniations and don't even know it" (Dkt # 11, p. 6). Plaintiff agues that there "is absolutely nothing in the record" that supports this opinion and the only interpretation of this statement is that ALJ Wisniewski substituted his own opinion in place of the medical expert's opinion (Id.). In response, defendant argues that ALJ Wisniewski's statement is consistent with the Commissioner's Listing of Impairments, which requires nerve root impingement in addition to a herniation (Dkt # 12, p. 3). Defendant further argues that ALJ Wisniewski examined sufficient information, such as laboratory evidence (T171) and Dr. Bagnall's records (T156, 163), to support his conclusion (Id.).

"An ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion." Goldthrite v. Astrue, 535 F. Supp. 2d 329, 339 (W.D.N.Y. 2008) (Telesca, J.). "In analyzing a treating physician's report, 'the ALJ cannot arbitrarily substitute [her] own judgment for

competent medical opinion,' nor can [she] 'set [her] own expertise against that of a physician who submitted an opinion or testified before [her].' " Gilbert v. Apfel, 70 F. Supp.2d 285, 290 (W.D.N.Y. 1999)(Larmier, J.) (quoting Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)).

ALJ Wisniewski evaluated plaintiff's low back pain under listing 1.04 (T18). "A claimant is automatically entitled to benefits if his or her impairment(s) meets the criteria set forth in Appendix 1 to Subpart P of Part 404". McKinney v. Astrue, 2008 WL 312758, *4 (N.D.N.Y. 2008). Listing 1.04(A) provides in relevant part:

> "1.04.    Disorders of the spine (e.g., herniated nucleus pulposus, . . .), **resulting in compromise of a nerve root** (including the cauda equina) or the spinal cord. With:
>
>     A.    **Evidence of nerve root compression** characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpart P, App. 1 §1.04 (emphasis added).

"Thus, in order to satisfy this listing", plaintiff must establish that (1) she has a disorder of the spine which compromises a nerve root or the spinal cord, and (2) that this disorder is manifested by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)". McKinney, supra, 2008 WL 312758 at *4.

Here, I find that ALJ Wisniewski did not substitute his own opinion in place of the medical experts' opinions. Rather, his was merely applying the Commissioner's rules regarding spinal disorders to the medical evidence, which demonstrated that while plaintiff

suffered from a disc herniation, there was no nerve root compromise necessary to qualify it as a disabling condition.  <u>See</u> 20 C.F.R. Part 404, Subpart P, Appendix 1 §1.04.

B.      **ALJ Wisniewski Properly Developed the Record by Including the June 20, 2001 Physician Note**

Plaintiff argues that ALJ Wisniewski erred in considering a June 20, 2001 treatment note from Dr. Szimonisz (T134) that stated plaintiff should not lift more than 20 pounds to support his conclusion that plaintiff was not disabled, because it was written seven months before plaintiff's onset date and irrelevant (Dkt #11, p. 6). In response, defendant argues that the June 20, 2001 treatment note is relevant because while the Commissioner is charged with developing the record at least twelve-months prior to the date claimant applies for benefits, he can consider earlier evidence, if necessary  (Dkt #12, p. 4).

"The ALJ may consider all evidence of record, including medical records and opinions dated prior to the alleged onset date, when there is no evidence of deterioration or progression of symptoms." <u>Pirtle v. Astrue</u>, 479 F.3d 931, 934 (8th Cir. 2007); <u>see</u> <u>Ward v. Shalala</u>, 898 F. Supp. 261, 263 (D. Del. 1995)("While evidence of her condition prior to the onset date and after the insured date is to be considered by the ALJ in furtherance of evaluating whether the applicant qualifies for benefits, the period between onset of disability and expiration of insured status is the focus of the inquiry.").

Here there is no indication that there was a rapid deterioration or progression of plaintiff's symptoms in the seven month period prior to her alleged January 18, 2002 onset (T44). Notably, plaintiff continued to work during this period (T185).

Moreover, a review of the record does not indicate that any subsequent medical evaluations of plaintiff's condition contradict the information contained in the June 20, 2001 evaluation. Dr. Poole, the state agency review physician, reinforced this information on June 30, 2003, when he opined that plaintiff could "occasionally lift or carry 20 pounds" and "could frequently lift and/or carry 10 pounds" (T149). Accordingly, I conclude that ALJ Wisniewski properly considered the June 20, 2001 treatment note.

C.   **The Appeals Council Properly Denied Review of ALJ Wisniewski's Findings After Examining the MRI Report**

Plaintiff argues that the Appeals Council failed to adequately explain why they refused to review ALJ Wisniewski's findings after they received the March 17, 2003 MRI report (Dkt. #11, pp. 7-8). Plaintiff also argues that the Appeals Council failed to develop the record appropriately after receiving the new evidence (Id.). Defendant responds that the evidence submitted to the Appeals Council would not have changed ALJ Wisniewski's decision because the MRI only reaffirmed information that he already examined (Dkt. #12, p. 4). Defendant also argues that the Appeals Council did not have to review the new evidence under the treating physician regulations because they were inapplicable in this instance (Id.).

The regulations expressly authorize a claimant to submit "new and material" evidence to the Appeals Council when requesting review of the ALJ's decision, without a "good cause" requirement. See Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996). "When the Appeals Council denies review after considering new evidence, the Secretary's final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the

new evidence". <u>Perez</u>, <u>supra</u>, 77 F. 3d at 45.  Accordingly, the additional evidence also becomes part of the administrative record on appeal when the Appeals Council denies review.  <u>See</u> <u>Schaal v. Apfel</u>, 134 F. 3d 496, 505 n. 8 (2d Cir. 1998).

"The Appeals Council is only required to review the entire record, which includes any new, material evidence submitted, and to determine if any of the ALJ's determinations go against the weight of the evidence." <u>Fernandez v. Apfel</u>, 1999 WL 1129056, *3 (E.D.N.Y. 1999). "No requirement is imposed on the Council to give a detailed description of the new medical evidence submitted or to explain its impact on the claimant's case." <u>Id.</u>; <u>see</u> <u>Riley v. Apfel</u>, 88 F. Supp. 2d 572, 580 (W.D.Va. 2000) ("The regulations do not explicitly require the Appeals Council to provide written findings with respect to any new evidence and its impact in light of the overall record and that this facilitates orderly decision-making within the agency").

Nevertheless, in its "Notice of Appeals Council Action" letter, dated March 19, 2007 the Appeals Council stated:

> "At the hearing the Administrative Law Judge stated that herniation, by itself, is not that significant unless there was impingement or stenosis. Your representative submitted an MRI that shows L4-5 herniation that slightly narrows the neural foramin and an L5-S1 herniation that causes no significant displacement of the nerve root. This evidence is consistent with your treatment records that note the presence of disc herniation, but not significant neurological deficits. This new evidence does not show that you have any limitations beyond those found by the Administrative Law Judge. The council found no basis for your representative's contention with respect to bias" (T6).

This section clearly explains that the Appeals Council did not review ALJ Wisniewski's decision because the MRI did not show the required nerve impingement or stenosis.  Because the MRI report only reaffirmed the evidence in the record, which ALJ Wisniewski already had the

opportunity to examine, the Appeals Council did not have to develop the record to support the MRI report, because the record already reflected the information.  See Law v. Barnhart, 439 F. Supp. 2d 296, 306 (S.D.N.Y. 2006) (rejecting the claimant's argument the ALJ was required to obtain the actual results of a MRI, the court held that the ALJ had fully developed the record by relying on medical records provided by the treating and consulting physicians, which referenced and interpreted the MRI).

Plaintiff's reliance on Amidon v. Apfel, 3 F. Supp. 2d 350, 356 (W.D.N.Y. 1998)(Laimer, J.) is misplaced.  In that case, the Appeals Council refused to review the ALJ's decision although it had received submissions from the plaintiff's *treating physician* refuting the findings contained in the ALJ's decision. Amidon, supra, at 356.  However, here, no treating physician's opinion refuting the ALJ's finding was presented to the Appeals Council. The report was merely an interpretation of plaintiff's MRI, not an assessment by a physician with a treating relationship with plaintiff of her physical limitations.

Therefore, I find that the Appeals Council satisfied its obligation by examining the MRI report and finding that it did not provide an adequate basis for changing ALJ Wisniewski's decision.

**D.**     **However, ALJ Wisniewski Failed to Properly Assess Plaintiff's Credibility**

As noted previously, plaintiff testified at the hearing that she needs to sit and lie down for "a couple hours" each day, "because the pain -- the more I stay on my feet, the worse it gets."  (T192).  In questioning Dr. Ryan, ALJ Wisniewski noted that "there was testimony here today from the Claimant that she finds it necessary to lie down during the course of the day for a

period of up to two hours.  If that were to occur during the work hours . . . what effect would that have upon occupations that exist in substantial [numbers] within the regional or national economy?" (T205).  Dr. Ryan responded: "Your Honor, this is a significant vocational limitation, and with this limitation this individual could not perform any substantial gainful activity that exists in significant numbers in the United States today" (Id.).

However, ALJ Wisniewski did "not accept that response to be accurate, because the hypothetical factors upon which it is based are considered to be a material exaggeration of the substantial evidence of record.  As previously referenced, I do not consider the claimant to be entirely credible in her testimony, *the extent of her subjective protestations remaining unsupported by clinical proof and other relevant evidence*" (T20-21, emphasis added).

In so ruling, he appears to have violated Social Security Ruling ("SSR") 96-7P (1996 WL 374186), which cautions that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence". Davidow v. Astrue, 2007 WL 1428430, *4  (W.D.N.Y.2007) (Siragusa, J.). "The ALJ misapplied this ruling's requirements with regard to plaintiff's credibility . . . . [by] discredit[ing] plaintiff's testimony because it . . . is unsubstantiated by objective medical evidence." Id., *5.

Since ALJ Wisniewski found that plaintiff "has severe low back pain, shortness of breath, and obesity" (T21, ¶3), it is certainly not inconceivable that these factors would require her to lie down for two hours during the day. "Symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." SSR 96-7P, 1996 WL 374186, *1. Accordingly, plaintiff "need not show that her impairment could

-19-

reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused *some degree* of the symptom." <u>Smolen v. Chater</u>, 80 F. 3d 1273, 1282 (9th Cir. 1996) (emphasis added).

Moreover,  ALJ Wisniewski's decision does not specifically indicate whether he found her testimony concerning her need to lie down to be credible or incredible. Instead, he states merely that she is not "entirely" or "fully" credible. This vague conclusion fails to satisfy the requirements of SSR 96-7P: "The determination or decision on credibility . . . must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." 1996 WL 374186, *2.

Plaintiff's credibility on this issue is absolutely critical to the disability determination, because if she is credible, then there is no doubt that she is disabled. Because ALJ Wisniewski failed to properly evaluate her credibility in that regard, I recommend that this case be remanded for reconsideration and clarification by the ALJ. "Remand is particularly appropriate where, as here, we are 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.' " <u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir.1996).


**CONCLUSION**

For these reasons, I recommend that defendant's motion for judgment on the pleadings (Dkt. # 9) be DENIED, that plaintiff's cross-motion (Dkt. # 11) be GRANTED, and

that this matter be remanded to the Commissioner for further proceedings consistent with this Report and Recommendation. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

**SO ORDERED**.

DATED:        December 8, 2008

JEREMIAH J. MCCARTHY
United States Magistrate Judge